Edgar F. Hazleton, S.
Petitioner prays that her child whom she has surrendered to respondents be returned to her.
The mother was married on September 13,1950. Her husband',, in March, 1953, abandoned petitioner who has not heard from him since and does not know of his whereabouts.
On October 23, 1956 the baby boy who is the subject of this: proceeding was born. Petitioner has testified that her husband1 is not this child’s father. This testimony, upon motion of petitioner’s attorney, has been stricken from the record. It is urged that the presumption of legitimacy is so strong that it will preclude a finding that the child is not the son of petitioner’s long absconded spouse. Be that as it may, it is my opinion that the presumption of legitimacy as urged herein is as ancient and outmoded as the era in which it was brewed. When the marriage has survived under circumstances such as to make access possible, then I admit the presumption may be indulged in, even though fanciful. But when, as in this case, the very thought of access would be absurd and outrages common sense, then this moth-eaten presumption amounts to just so much balderdash.
Nevertheless, contrary to my own conviction, I must exclude the testimony of the mother anent nonaccess since the law of this State continues to be that ‘1 neither ’ ’ spouse is * ‘ competent ” to testify to “ nonaccess during wedlock” where the effect would be to establish the illegitimacy of the offspring, and this is true “ Avhatever may be the form of legal proceedings, or whoever may be the parties thereto.” (Chamberlain v. People, 23 N. Y. 85, 88.)
Fortunately, for the sake of justice, the question of illegitimacy can be kept out of this proceeding and thus the application of this obsolete rule avoided.
The facts further show that it was a sister-in-law of petitioner, who negotiated the meeting of petitioner and respondents, whom she knew wanted to adopt a child. Said sister-in-law also was an old friend of respondents and arranged for the delivery of the child by his mother who did not Avant to keep her baby and *783 was unable to care for and support him. The child was turned over to respondents by his mother the same day she left the hospital where the baby was born. The respondents took care of the lying-in expenses.
When the mother surrendered her child she signed the usual papers in an adoption proceeding. It is clear that her reason for executing the agreement of adoption so quickly was that the mother planned to divorce her absent husband. Several witnesses, including the sister-in-law, so testified. I believe them. Accordingly, the attorney for respondents arranged for the mother to come to the chambers of the Surrogate on November 15, 1956 when her testimony was taken and she reacknowledged and reaffirmed her adoption agreement.
Since then the circumstances and attitude of the petitioner seem to have somewhat changed. She has a job as a waitress, her health has improved and she lives with her parents in whose home the child is welcome. And at this point, I might mention that the mother’s way of life does not impress me as being for the best interests of the child and certainly not of the high standard as that of the respondents.
On October 21, 1957, over a year after she had surrendered her child to respondents, petitioner began this proceeding to abrogate the agreement of adoption and have the child returned to her. Over this period, the mother never so much as sought to see her offspring.
The respondents have learned to love the child to whom they are greatly attached and for whom they provide a good home.
The substance of petitioner’s reasons for wanting her child back is that she loves him, regrets having given him up and can now take care of him as she could not do when she brought him into this world. Petitioner’s attorney also contends that since her absconded husband’s signature and consent are not part of the adoption agreement, the document is ineffective.
Although the Surrogate possesses broad discretion in a motion such as this, nevertheless, it would amount to an improvident use of such discretion were he to release the mother from her agreement of adoption merely because she has seen fit to change her mind, and especially so after the six months ’ waiting period has expired. There is no indication that she was the victim of fraud, duress or undue influence. On the contrary, when petitioner signed the adoption agreement there was no misunderstanding, she was of sound mind and under no restraint. Therefore the respondents who relied upon her act cannot now be summarily deprived of their rights because of a whim. *784 Although I subscribe to the adage that it is a woman’s privilege to change her mind, I recognize that even that has its limitations — and decidedly so when its application would interfere with the rights of others and result in an injustice.
In respect of the absence of the consent of petitioner’s absconded husband to the adoption, let me say that a citation directed to him was issued out of this court and was duly served by publication. What else could have been done in view of his abandonment of petitioner and his whereabouts being unknown ? It is inescapable that the husband of petitioner has continuously abandoned his .wife and “ his ” child since 1953, and I so find.
The petition herein accordingly is dismissed.
Submit order on notice.