**R. J. STEVENS et al., Appellants,**

v.

**CITY OF LOUISVILLE, Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 31, 1974.

Henry A. Triplett, Hogan, Taylor, Denzer & Bennett, Louisville, for appellants.

James E. Thornberry, Director of Law, Herbert Van Arsdale II, Asst. Director of Law, Louisville, for appellee.

VANCE, Commissioner.

This is an appeal from a judgment upholding the validity of an ordinance of the City of Louisville, Kentucky, which prohibited horseback riding upon public ways and park property (with certain exceptions) in

the City of Louisville and which dismissed appellant's claim for an injunction to prohibit the city from interfering with their alleged right to ride horses upon the public ways of the city and in particular upon and along a bridle path located on Southern Parkway.

The pertinent part of the ordinance in question reads as follows:

"505.10 (1) No person shall ride a horse within the City upon any public way or park property, except upon property which has been duly designated for that purpose by the Director of the Metropolitan Park and Recreation Board. This section shall not apply to persons riding in recognized horse shows or civic events.

"(2) Persons taking horses to places where they may be legally ridden shall either transport them thereto in vans, trailers or motor vehicles from the premises whereon they are stabled."

The ordinance is attacked upon the following grounds: (1) The city does not have a right to stop a lawful activity which is not a nuisance per se; (2) the ordinance is discriminatory and constitutes special legislation because horseback riding cannot properly be singled out as a subject for legislation; (3) the ordinance grants an arbitrary power to the Director of the Metropolitan Park and Recreation Board because no standards are prescribed therein to control the exercise of his discretion; (4) the city has no right to regulate legitimate park uses of park property—that power residing solely in the Metropolitan Park and Recreation Board.

■ A threshold question is presented as to whether the ordinance purports to authorize the Director of the Metropolitan Park and Recreation Board to designate certain public ways upon which horses may be ridden or whether his discretion is limited to park property. We construe the ordinance to prohibit all horseback riding upon public streets and ways and to grant discretion to the director to designate bridle paths upon park property only.

■ The ordinance, insofar as it relates to public ways and streets, does not fall victim to the attacks made upon it. We consider it a valid exercise of the police power of the city and reasonable in view of the interest sought to be protected.

Appellants' brief assaults the ordinance as being discriminatory in that it applies only to horses as follows:

" * * * We, therefore, assume that kangaroo riders can employ bridle paths for their purposes but horse riders cannot. An elephant can be ridden on the bridle path, but a horse cannot. If a tiger could be trained, it could be ridden. Is a donkey or a jackass a horse? What about a mule? Does this relate to live horses only or does it forbid a child rocking on a hobbyhorse? What about a mechanical horse? Could a merry-go-round be set up? The ordinance forbids none of these but only relates to the valiant steed who is such a major part of Kentucky's heritage. The trial Court's finding that this ordinance is not discriminatory because it treats all horse riders the same is misfounded. If a horse rider cannot ride his horse but can ride an animal which is not legally a horse, but similar to a horse, then the ordinance discriminates against not only the horse but the horse rider. * * *.

"Saddling the descendents of Pegasus, Man O'War, Traveler, Silver, Dan Patch, Widow Maker, Trigger, Champion, Black Beauty, Bucephalus, Rosinante and Black Bess, to name only a few, with this asinine canon is to denigrate the legacy of the courser and the charger, the gigster and the stepper, the hunter and the racer, the clipper and the cob, the padnag and the palfrey and capitulate at last to the gasoline powered conveyance which has contributed little to

our history but much to our ecological turning point."

The evidence in this case clearly indicated that horseback riding in areas in which vehicular traffic was heavy presented a serious *safety problem which did not exist* with respect to riders of pigs, goats, cattle, elephants or kangaroos. Thus there is a valid basis, relating to horses, and not to other animals, for treating horses as a separate classification for the purpose of this ordinance.

We also note that the ordinance does not define the term "horse". That term is therefore subject to judicial interpretation.

The extent to which the term "horse" could possibly be extended to other animals by statutory construction and thus allay the fears of appellants that kangaroo and elephant riders may go unpunished under the ordinance and that donkeys, mules, jackasses and hobbyhorses may not be horses in the legal sense is aptly illustrated in Regina v. Ojibway, 8 Criminal Law Quarterly 137 (Toronto 1965)[1] in which the question presented was whether a pony was a small bird under the provisions of the Small Birds Act. The decision by Blue, J., held as follows:

"This is an appeal by the Crown by way of a stated case from a decision of the magistrate acquitting the accused of a charge under the Small Birds Act, R.S.O., 1960, c724, s. 2. The facts are not in dispute. Fred Ojibway, an Indian, was riding his pony through Queen's Park on January 2, 1965. Being impoverished, and having been forced to pledge his saddle, he substituted a downy pillow in lieu of the said saddle. On this particular day the accused's misfortune was further heightened by the circumstance of his pony breaking its right foreleg. In accord with current Indian custom, the accused then shot the pony to relieve it of its awkwardness.

"The accused was then charged with having breached the Small Birds Act, s. 2 of which states:

'2. Anyone maiming, injuring or killing small birds is guilty of an offense and subject to a fine not in excess of two hundred dollars.'

"The learned magistrate acquitted the accused, holding, in fact, that he had killed his horse and not a small bird. With respect, I cannot agree.

"In light of the definition section my course is quite clear. Section 1 defines 'bird' as 'a two-legged animal covered with feathers'. There can be no doubt that this case is covered by this section.

"Counsel for the accused made several ingenious arguments to which, in fairness, I must address myself. He submitted that the evidence of the expert clearly concluded that the animal in question was a pony and not a bird, but this is not the issue. We are not interested in whether the animal in question is a bird or not in fact, but whether it is one in law. Statutory interpretation has forced many a horse to eat birdseed for the rest of its life.

"Counsel also contended that the neighing noise emitted by the animal could not possibly be produced by a bird. With respect, the sounds emitted by an animal are irrelevant to its nature, for a bird is no less a bird because it is silent.

"Counsel for the accused also argued that since there was evidence to show accused had ridden the animal, this pointed to the fact that it could not be a bird but was actually a pony. Obviously, this avoids the issue. The issue is not whether the animal was ridden or not, but whether it was shot or not, for to ride a pony or a bird is of no offense at all. I believe that counsel now sees his mistake.

1. Regina v. Ojibway is entirely fictional. It was originally published in the Criminal Law Quarterly, Copyright 1966 by Canada Law Book, Ltd., Toronto, and is reprinted here by permission of Canada Law Book, Ltd.

"Counsel contends that the iron shoes found on the animal decisively disqualify it from being a bird. I must inform counsel, however, that how an animal dresses is of no concern to this court.

"Counsel relied on the decision in *Re Chicadee,* where he contends that in similar circumstances the accused was acquitted. However, this is a horse of a different color. A close reading of that case indicates that the animal in question there was not a small bird, but, in fact, a midget of a much larger species. Therefore, that case is inapplicable to our facts.

"Counsel finally submits that the word 'small' in the title Small Birds Act refers not to 'Birds' but to 'Act,' making it The Small Act relating to Birds. With respect, counsel did not do his homework very well, for the Large Birds Act, R.S.O., 1960, c. 725, is just as small. If pressed, I need only refer to the Small Loans Act, R.S.O., 1960, c. 727, which is twice as large as the Large Birds Act.

"It remains then to state my reason for judgment which, simply, is as follows: Different things may take on the same meaning for different purposes. For the purpose of The Small Birds Act, all two-legged, feather-covered animals are birds. This, of course, does not imply that only two-legged animals qualify, for the legislative intent is to make two legs merely the minimum requirement. The statute therefore contemplated multilegged animals with feathers as well. Counsel submits that having regard to the purpose of the statute only small animals 'naturally covered' with feathers could have been contemplated. However, had this been the intention of the legislature, I am certain that the phrase 'naturally covered' would have been expressly inserted just as 'Long' was inserted in the Longshoreman's Act.

"Therefore, a horse with feathers on its back must be deemed for the purposes of this Act to be a bird, and *a fortiori*, a pony with feathers on its back is a small bird.

"Counsel posed the following rhetorical question: If the pillow had been removed prior to the shooting, would the animal still be a bird? To this let me answer rhetorically: Is a bird any less of a bird without its feathers?"

Until the matter is squarely presented we decline to pass upon the question of the applicability of the ordinance to riders of mules, goats, cattle or other animals.

■ As to park property, the prohibition against horseback riding is not absolute. The ordinance authorizes the Director of the Metropolitan Park and Recreation Board to designate areas within parks in which horses may be ridden. This board without doubt has the power to establish bridle paths within the parks and the ordinance does not encroach upon that power. The argument that the Director of the Metropolitan Park and Recreation Board, a position created by the joint resolution of the city and county, is without authority to make the designation for the board upon the ground that no standards have been established for the exercise of his discretion is too tenuous to be given credit. He is under the direct supervision and control of the board and is charged with such duties as the board may specify. The board can completely control the actions of the director and it is unreasonable to conclude that full-board consideration is required for every decision affecting the operation of the parks.

Even if we should agree that designation of bridle paths within the parks is an exclusive function of the board rather than its director, we would be loathe to invalidate the ordinance upon that ground for the simple reason that we fail to see that the appellants are adversely affected.

■ The general police power of the city extends to the parks located within the city and until there is some designation of a bridle path within the parks all horseback riding therein is prohibited. There is

no reason to believe that the Director of the Metropolitan Park and Recreation Board would or could refuse to designate as a bridle path an area which the majority of the board wanted designated as such.

The judgment is affirmed.

All concur.