Cecil PENDLETON, by his next friend, William F. Gadd, Appellant,

v.

Bee PENDLETON et al., Appellees.

Court of Appeals of Kentucky.

Oct. 3, 1975.

Rehearing Denied Feb. 6, 1976.

**508**

William C. Jacobs, Lexington, for appellant.

Edward P. Roark, Lancaster, Phillip D. Scott, McDonald, Alford & Roszell, Scotty Baesler, Lexington, for appellees.

PALMORE, Justice.

Cecil Pendleton, an infant proceeding by next friend, brought this action in the Fayette Circuit Court to pursue certain assets, including real estate located in Fayette County, theretofore disposed of by the administrator and apparent heirs and distributees of Cornelius Pendleton, who had died intestate a resident of Garrard County. The gist of Cecil's claim is that he was Cornelius Pendleton's only child and sole heir and distributee. He appeals from a judgment dismissing the action.

According to the record, Cecil is the natural child of Cornelius by Bethel Rawlins. He was born in 1956. In a bastardy proceeding brought in 1959 the Fayette County Court adjudged that Cornelius was the father and directed that he support the child. A breach of promise suit brought in 1960 by Bethel Rawlins against Cornelius in the Fayette Circuit Court was dismissed pursuant to a jury verdict finding that when the alleged promises of marriage were made Bethel was already married to one Arnold Wasson. Cornelius died in 1966. He was unmarried and except for Cecil had no children.

The complaint consisted of two counts. Count 1 asserted a claim against the administrator, his surety, and the persons to whom the administrator allegedly had distributed the assets of the estate, and it demanded a redistribution. Count 2 alleged that the defendants other than those named in Count 1 had become the record owners of real estate in Fayette County owned in fee simple by Cornelius Pendleton at the time of his death, and it demanded that Cecil be adjudged the owner of this property or that he recover its value from the respective defendants holding record title.

By an amended complaint Cecil alleged that two of the distributees, a brother and nephew of Cornelius, had executed and caused to be recorded in the office of the Fayette County Court Clerk a false affidavit or affidavits of descent purporting to show the heirs of Cornelius Pendleton, knowing such information to be false, that Cecil was thereby damaged in that the affidavits were relied upon in effecting transfers of the property, and that the affiants were liable for such damages pursuant to the penalty provisions of KRS 382.990(2).

The trial court determined that as to the administrator and distributees the venue of the action was improper because KRS 452.-415 and 452.420 required it to be brought in Garrard County. The suit was thereupon dismissed as to them, but as against the

purchasers of real estate in Fayette County venue was held proper under KRS 452.400.

■ We are of the opinion that the trial court was correct in adjudging that KRS 452.415 and 452.420 require the kind of action stated in Count 1 to be brought in the county in which the personal representative qualified, which in this instance was Garrard County. Cf. *Fleece v. Shackelford,* 204 Ky. 841, 265 S.W. 460 (1924).

■ The allegations of the amended complaint with reference to the affidavits of descent presented an entirely new and different cause of action from that stated in Count 1, and it may be that by virtue of KRS 452.460(1) the venue of such an action would lie in Fayette County on the theory that it was there that the injury was done. We need not so decide, however, because we are of the opinion that in any event the facts alleged in the complaint and amended complaint negate the existence of a cause of action under KRS 382.990(2). Hence the defendants in question were entitled to a dismissal pursuant to their defense that the amended complaint failed to state a claim upon which relief could be granted. Our conclusion in this respect is founded on the premise that the only possible basis for Cecil's claim of heirship is that KRS 391.-090(2), which provides that a "bastard shall inherit only from his mother and his mother's kindred," violates the equal protection clause of the 14th Amendment and that an illegitimate child must be accorded the same rights of inheritance as a legitimate child. The affidavits in question were executed and filed in 1966, at which time the state of the law was such that the affiants could not possibly have been charged with knowledge that an illegitimate child in this state would be held an heir of its father. For this reason they could not have been guilty of any actual fraud.

■ Turning now to the remaining aspects of the litigation, we concur in the trial court's conclusion that venue of an action to recover real estate through assertion of a hitherto-unrecognized heirship is laid by KRS 452.400(1) in the county in which the land or some part of it is situated. The precedents cited by appellees to the contrary do not support their position. Some of them did not involve real estate, and those that did were cases in which the object of the litigation was to partition, or to sell and divide the proceeds from, land held jointly by inheritance or devise. "An action for the partition of the real estate of a deceased person, under section 66 of the Civil Code [KRS 452.420] must be brought in the county in which the personal representative qualified." *Boreing v. Melcon,* 159 Ky. 14, 166 S.W. 612 (1914).

It is significant to note that subsections (2) and (3) of KRS 452.400, which cover suits for partition or sale of real property, specifically exclude actions covered by KRS 452.420, whereas there is no such exception to subsection (1).

Cecil's claim as the heir of his father is made in the alternative, as follows:

KRS 391.100 provides (1) that the issue of an incestuous marriage is not legitimate and (2) that "the issue of all other illegal or void marriages is legitimate." Cecil alleges that he was born during the existence of a common-law marriage between his mother and father which, though prohibited and void by virtue of KRS 402.020(4), was a marriage within the terms of KRS 391.-100(2). If, on the other hand, it be held otherwise, he contends that under the equal protection clause of the 14th Amendment he is entitled to inherit from his father regardless of KRS 391.090(2).

■ The child of a common-law marriage entered into in a state that permits such marriages is legitimate in this state even though for some reason the marriage was void in the first instance. Cf. *Copenhaver v. Hemphill,* 314 Ky. 356, 235 S.W.2d 778 (1951). But in this state there is no such thing as a common-law marriage. What might be a common-law marriage somewhere else is no marriage at all here. As distinguished from being "void" or "ille-

gal" it simply does not exist as a "marriage" of any kind. We construe KRS 391.-100(2) as referring to a marriage that to outward appearances would substantially comply with the legal requirements of a marriage in the state in which it is performed. Cf. *Helm v. Goin,* 227 Ky. 773, 14 S.W.2d 183, 185 (1929).

The trial court held that the 1959 county court judgment in the bastardy proceeding was *res adjudicata* to Cecil's claim of legitimacy in this proceeding. We express no opinion in that respect.

In *Labine v. Vincent,* 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), the Supreme Court of the United States held by a 5–4 vote that a state law (Louisiana) barring an illegitimate child from inheriting from its father equally with legitimate children has a rational basis and does not violate the equal protection clause of the 14th Amendment. By a *per curiam* opinion joined in by seven of its members the same court in *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), held that Texas statutes giving legitimate children an enforceable right of support against the father but not extending the same right to illegitimate children were discriminatory and denied to illegitimate children the equal protection guaranteed by the 14th Amendment.

In *Gomez* no reference was made to *Labine.* It was observed, however, that in the areas of wrongful death and workmen's compensation it had been settled by previous decisions that "a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally." Cf. *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1971). In *Weber, Labine* had been distinguished as follows:

"That decision reflected, in major part, the traditional deference to a State's prerogative to regulate the disposition at death of property within its borders. . . . The Court has long accorded broad scope to state discretion in this area. Yet the substantial state interest in providing for 'the stability of . . . land titles and in the prompt and definitive determination of the valid ownership of property left by decedents,' *Labine v. Vincent,* 229 So.2d 449, 452 (La.App.1969), is absent in the case at hand

"Moreover, in Labine the intestate, unlike deceased in the present action, might easily have modified his daughter's disfavored position [by will or by marriage to her mother]. . . . The burdens of illegitimacy, already weighty, become doubly so when neither parent nor child can legally lighten them."

It is readily apparent that the meaning of the equal protection clause cannot be ascertained from what it says, nor even from what the Supreme Court has said about it. As in *Regina v. Ojibway\** a pony was found to be a small bird, so under the 14th Amendment an illegitimate child may be either a speckled bird or a jackass, depending on its current aspect as (and when) viewed by the keeper of the royal secrets of the Constitution. Indeed it appears that here is a corner of the world Alice in Wonderland would not find unfamiliar.

■ From time immemorial the law of this state has recognized and enforced the responsibility of a father for the support of his illegitimate child, notwithstanding the vicissitudes of proof. Since it is now held by the court of last resort in the federal constitutional field that a child's right of support from its father is within the coverage of the equal protection clause and, if accorded to legitimate children in general, must be accorded to illegitimate children as well, it would be our inclination to hold that although a right of inheritance may not

---

\* Reprinted by permission in *Stevens v. City of Louisville, Ky.,* 511 S.W.2d 228, 230–231 (1974).

have the immediacy or social significance of a present need for support, yet a right is a right, the existence of which surely ought not to depend on whether it falls within the ambit of state-enforced welfare legislation. If a state cannot constitutionally force a father to support his children without including illegitimate children, we can find no justification in logic for its authority to deny illegitimate children the same right of inheritance conferred upon other children. Though the right has something of a fugitive nature in that the father may of course discriminate against any child, legitimate or illegitimate, it seems incongruous that the state should be allowed to do it for him. But after all, this is mere logic, which seems to have a declining importance in the world of constitutional jurisprudence.

We are equipped with neither a crystal ball nor the type of scales on which it is evident that a right must be weighed in order to determine whether it is heavy enough to register under the 14th Amendment. Nor are we willing to undertake the sophistry of distinguishing *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971). Suffice it to say that it has not been overruled by the court that has the exclusive power to overrule it, and we think that as long as it remains the law it governs this case.

The judgment is affirmed.

All concur except LUKOWSKY, J., not sitting.