Robert L. RUDOLPH, Appellant,

v.

Nannie Mae RUDOLPH, Appellee.

Court of Appeals of Kentucky.

May 20, 1977.

Supplemental Opinion Sept. 23, 1977.

Joe A. Evans, III, Moore, Morrow & Frymire, Madisonville, for appellant.

Lawrence T. Gordon, Franklin, Gordon & Hobgood, Madisonville, for appellee.

OPINION AND ORDER

Before MARTIN, C. J., WILHOIT and WINTERSHEIMER, JJ.

WILHOIT, Judge.

Appellant Robert L. Rudolph filed a complaint in Hopkins Circuit Court praying that he be declared an heir at law of Robert Rudolph. The parties have stipulated that appellant Robert L. Rudolph is an illegitimate child of Robert Rudolph. Robert Rudolph died intestate on January 14, 1976, a resident of Chicago, Illinois. Appellee Nannie Mae Rudolph is the widow of Robert Rudolph. At the time of Robert Rudolph's death he owned a one-half undivided interest in a house and lot in Madisonville, Kentucky; the other one-half undivided interest was owned by his widow, appellee Nannie Mae Rudolph. It is also stipulated that appellee Robert L. Rudolph's mother is Rose Hayden Poindexter, and that she was never married to Robert Rudolph, that they never lived together, and that neither of them represented themselves to be husband and wife.

The birth certificate of appellant Robert L. Rudolph names Robert B. Rudoplh as his father and Rose Hayden as his mother. By affidavit, Rose Hayden Poindexter has stated that she is the mother of appellant and that he was born "the result of my relationship with Robert B. Rudolph" and that she and Robert B. Rudolph were never married. Rose Hayden Poindexter also stated that

appellant lived with her until he was one or two years old, at which time he went to live with his father and his father's parents, and that "(a)t all times Robert B. Rudolph recognized Robert as his son and expressed his love and affection for him. This relationship continued until the day Robert B. Rudolph died." By affidavit, Clinton Smith stated that he had known both Robert B. Rudolph and Rose Hayden Poindexter for over 40 years and that during this time "Robert B. Rudolph often referred to Robert L. Rudolph as his only son and always acknowledged him to be his son."

Appellee Nannie Mae Rudolph moved for summary judgment. The trial court, noting that the constitutionality of an act of the general assembly was brought in question, gave notice pursuant to CR 24.03 to the Attorney General. The Attorney General acknowledged receipt of notice and stated that he did not wish to be heard in the action "at this time." The trial court granted Nannie Mae Rudolph's motion for summary judgment. Robert Rudolph appeals.

This case involves the constitutionality of KRS 391.090, which provides:

(1) The estate of a bastard shall descend and be distributed in the same manner as that of a person born in lawful wedlock, except that the inheritance shall go to the mother and her kindred and not to the father and his kindred.

(2) *A bastard shall inherit only from his mother and his mother's kindred.*

(3) If a man who has had a child by a woman afterward marries her, the child or its descendents, if recognized by him before or after marriage, shall be deemed legitimate. (Emphasis added).

■ Appellee argues that *Pendleton v. Pendleton*, Ky., 531 S.W.2d 507 (1976), is controlling here. That case considered the provisions of KRS 391.090 only from the perspective of the application of the fourteenth amendment to the United States Constitution. While very critical of the re-

sult reached by the United States Supreme Court in *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), the Court in *Pendleton* properly concluded that it was bound by that decision as it interpreted the Federal Constitution.[1] We believe, however, that aside from the provisions of the fourteenth amendment, KRS 391.090(2) violates Section 2 of the Constitution of the Commonwealth of Kentucky insofar as that statute would bar the appellant from inheriting from his father.

■ Section 2 of our constitution provides that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." In interpreting this section our highest court has held that "whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interests of the people is arbitrary." *Sanitation District No. 1 v. City of Louisville,* 308 Ky. 368, 213 S.W.2d 995 (1948). We find no legitimate interest of the people of Kentucky in prohibiting an illegitimate child, admitted by all concerned to be the child of his father, from inheriting from his father.

■ Statutes of other states, similar to our statute here, have been upheld on the basis that they further a state interest in promoting legitimate family life and strengthening family ties. The state does have a proper interest in promoting such ends, but we fail to see how KRS 391.090(2) can be justified on this basis. In the first place penalizing an infant appears to be a rather dubious and unreasonable method of discouraging his parents from certain conduct before he is even born. Secondly, the Legislature does not appear to have been motivated to preserve or strengthen legitimate family life in enacting this statute since it permits an illegitimate child to inherit from his mother and her kindred. It is unlikely that our lawmakers would intend to encourage the family ties of a father but not those of a mother.

1. Since this opinion was written the United States Supreme Court has handed down its decision in *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) which appears to support on federal constitutional grounds the result we reached here.

The more likely purpose of this statute, and one found to be the purpose of similar statutes in other states, is to provide for the stability of land titles and the prompt and definitive determination of the ownership of property left by a decedent. *Labine, supra.* In a case in which there is no question of the parentage of a claimant, a statute which intends to provide for the prompt and definitive determination of the ownership of property left by a decedent should have no application. The effect of applying a statute such as ours to that situation denies a claimant inheritance not because his parentage is questionable but simply because he was born out of wedlock. This is the situation here. This appellant in effect has been denied the right to inherit from his father solely because he was born out of wedlock. Such a result is essentially unjust and cannot be grounded in any legitimate interest of the people of Kentucky.

Under our statute a claim of illegitimate filiation, no matter how false, may be made against the estate of a female, while a similar claim, no matter how meritorious, is prohibited from being made against the estate of a male. This is indeed a curious, and we believe unreasonable, method of providing for prompt and definitive determination of title to property. We are well aware that normally it is less difficult to prove a maternal than a paternal relationship, but we are equally aware that in our modern society such is often not the case. In any event, the problem of proof seems more reasonably to address itself to evidentiary standards than to the outright barring of claims. The Legislature is certainly free to enact reasonable legislation to guard against false claims and to require that any claim be made within a period of time which will provide for prompt determination of title to property.

We recognize that this decision reaches a different result from that reached in former decisions of our courts. Those decisions did not consider KRS 391.090 and its predecessors in light of Section 2 of our constitution. The effect of these decisions, however, has been to establish a rule of property and courts must exercise great caution in ruling contrary to prior cases settling rules of property. *Hanks v. McDanell*, 307 Ky. 243, 210 S.W.2d 784, 17 A.L. R.2d 1 (1948). A strong case can be made that this decision should be given prospective effect only. That question has neither been briefed nor argued by the parties. Pursuant to RAP 1.242, the parties are hereby ordered within 20 days to submit to the Court further briefing on the question of whether this decision should be given only prospective application.

## Supplemental Opinion

The Court has considered the briefs of the parties and of the amicus curiae on the issue of the propsective or retroactive application of the rule previously announced by us in this case (Opinion rendered May 20, 1977) concerning the right of an illegitimate child to inherit from his father. We are of the opinion that this rule should apply to this case and the judgment of the trial court should be reversed.

Inasmuch as the case of *Pendleton v. Pendleton*, Ky., 531 S.W.2d 507 (1976), is presently pending before the Kentucky Supreme Court on remand from the United States Supreme Court and the question of the application of the similar rule in *Trimble v. Gordon*, 430 U.S. 763, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) will no doubt be considered by Kentucky's highest court, we refrain from going farther than is necessary to decide this particular case.

The judgment of the trial court is reversed and the case is remanded for further proceedings.

All concur.