Tom MARTIN d/b/a Martin Creative d/b/a Tom Martin Sports Photography, Plaintiff,

v.

Richard J. CUNY, Benchmark, Inc. a Colorado corporation, and John Does 1 through 4, Defendants.

No. 93–K–1622.

United States District Court, D. Colorado.

June 15, 1995.

Timothy J. Martin, Lakewood, CO, for plaintiff.

Peter Edwards, Gayle Kersting, Rothgerber, Appel, Powers & Johnson, Denver, CO, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR ENTRY OF JUDGMENT

KANE, Senior District Judge.

### I.

### JURISDICTION

This court has jurisdiction over the parties and the subject matter of copyright infringement pursuant to 28 U.S.C. § 1338(a). The second claim for relief, a state claim for violation of the Colorado Consumer Protection Act, § 6–1–101, C.R.S., *et seq.*, also subject to the court's supplemental jurisdiction (28 U.S.C. § 1367), was dismissed on December 5, 1994, the first day of trial, upon defendant's oral motion for judgment as a matter of law.

## II.

### FACTS

The plaintiff (Martin) filed this civil action on August 2, 1993, claiming the defendants infringed his copyright in his photographic work entitled "Loving Couple." The photograph was registered November 16, 1992 in the United States Copyright Office under Registration No. Vau 243,386. The photograph (work) is a picture of a heterosexual couple simulating cunnilingus with a noticeably vapid mien.[1]

Martin is a professional photographer who was living in Aspen, Colorado in December 1983 and presently resides in Englewood, Colorado. In that month Martin had a telephone conversation with a friend, Jim Richardson, who lived in Florida. They were arranging for a visit by Martin to Florida. Included in their plans was a sailboat trip with Richardson's friends.

During the conversation, the plaintiff mentioned he had heard of a liquor store near the Vail/Beaver Creek area named Beaver Liquors and opined that this was a clever name. Richardson asked plaintiff to stop at the store en route to Denver to determine if it had any tee-shirts or other merchandise bearing the store name or logo on them. Martin did not know if such merchandise existed, but later called the store and learned that tee-shirts were indeed available for sale.

The defendant Benchmark Liquors, Inc., has been in business as a retail packaged liquor store under the name "Beaver Liquors" since 1977. The stockholders are the defendant Richard J. Cuny and Ludwig Jordan. From 1977 to 1982 it sold merchandise, including tee-shirts, which advertised the Beaver Liquors name. Cuny designed these shirts and contracted with others to execute his ideas into merchandise.

Sometime in 1982 the state authorities who regulate packaged liquor retail outlets advised Cuny and Jordan that the sale of such merchandise had to be limited or even eliminated because it was not supplementary to the sale of the regulated products. Accordingly, Cuny caused a second corporation (Lips Too) to be formed to sell tee-shirts, posters and other novelty items. Since then, Lips Too has operated a retail store adjacent to the Beaver Liquors outlet. Customers of one store can see through a glass partition into the other store. The building occupied by both stores is visible from Interstate Highway 70 and is accessible from an exit about one-quarter mile away.

In December 1983, while en route to Florida via Denver, Martin visited the two stores and met Cuny. The two engaged in conversation, at first desultory and then somewhat focused on the possibilities of cooperative efforts. There are no other witnesses to this conversation and their versions are in sharp conflict. I find Cuny's testimony persuasive. My findings of fact, therefore, implicitly reject Martin's testimony to the contrary.

Cuny and Martin agree they arranged for Martin to take a photograph for Lips Too when on board the sailboat. They disagree

---

1. Given its subject matter, this opinion may join certain cases with obscure citations found in well-thumbed volumes in law school libraries. These cases are favorites of second year law students imprisoned in libraries and seeking diversion from the boredom of yet another year of the highly touted and low-yielding case method of instruction. Having known a law professor, now thankfully of *emeritus* status, who assigned students to locate these cases as an exercise in legal research, I list a few to bring them into the age of computers and political correctness through the back door: See the stately *Lason v. State,* 12 So.2d 305 (1943); also *Carter v. Ingalls,* 576 F.Supp. 834 (1983); *Doe et ux. v. Missouri–Kansas–Texas Railroad Co.,* No. 18338, Dist.Ct. 54th Jud.Dist.Tex. (1935); *People v. Nitti,* 312 Ill. 73, 143 N.E. 448 (1924); *Matter on Anonymous,* 12 Misc.2d 781, 177 N.Y.S.2d 784 (N.Y.Sur. 1958); *Geiler v. Comm. on Jud. Qual.,* 10 Cal.3d 270, 110 Cal.Rptr. 201, 515 P.2d 1 (1973); *Fen v. Dixe,* 82 Eng.Rep. (Reprint) 233 (1675); *Spears v. U.S.,* 266 F.Supp. 22 (D.C.W.Va 1967); *Hall Moody Institute v. COPASS,* 108 Tenn. 582, 69 S.W. 327 (1902); *Wolfe et al., v. Feldman,* 158 Misc. 656, 286 N.Y.S. 118 (N.Y. City Ct.1936); *Gill v. Middleton,* 105 Mass. 477, 7 Am.Rep. 548 (1870); *Stevens et al., v. Louisville,* 511 S.W.2d 228 (1974); *McGinley v. Cleary,* 2 Alaska Rep. 269 (1904); *U.S. v. Byrnes,* 644 F.2d 107 (1981); *Norman v. Reagan, et al.,* 95 F.R.D. 476 (D.C.Or. 1982); *Miles et al., v. City Council of Augusta,* 551 F.Supp. 349 (D.C.Ga.1982); and *Coverson v. State,* 617 So.2d 642 (Miss.1993). If you find each of these cases you are entitled to join the law review; if your law school library doesn't have all of them, you should transfer at once.

about most everything else in the conversation. I find Martin told Cuny he was going to Florida to photograph pictures for a brochure to advertise the sailboat. Believing this, Cuny asked Martin to photograph a man and woman simulating cunnilingus on the sailboat while garbed in Lips Too tee-shirts and with the man wearing a Lips Too hat facing backwards so that the logo would be apparent. Further, Cuny instructed Martin that the woman's panties needed to be visible so that the scene would be easily recognized as a parody rather than undifferentiated pornography.

Lips Too did not sell women's tee-shirts with the suggestive lips and tongue logo previously designed by Cuny. Therefore, Cuny applied heat transfers of the Lips Too logo to blank women's-sized shirts which he gave to Martin to take along to Florida for the express purpose of dressing the female model in the photograph. The parties differ about whether the tee-shirts were measured and cut by Cuny in Colorado or by Martin in Florida. It really makes no difference where the actual cutting or tailoring took place, or whether one tee-shirt was cut in Colorado and another in Florida. I find it was Cuny's idea to have the female model wearing a shirt cut off slightly below the areola of the breast.

Cuny gave Martin Lips Too merchandise in exchange for taking the photograph. Such barter agreements had been used by Cuny and Martin with others in the past and neither customarily reduced them to writing.

Martin continued his journey to Florida with the merchandise and ideas he received from Cuny. He took the disputed photograph (work) while on board the sailboat with Richardson and the models. Cuny has argued that Martin did nothing more than point the camera in the right direction and push the shutter release button. That is an understatement. Martin selected the positioning of the models, the setting on the boat, the lighting and other elements of artistic composition as well as film type, shutter speed and lens settings.

In March or April 1984, Cuny received two photographic slides from Martin. He had enlargements made and selected one to use on posters and tee-shirts. The slides were stamped with a notice of copyright bearing Martin's name. (It was Martin's custom and habit to stamp "copyright" on all slides returned to him from the photographic development laboratory.)

Cuny had a blow-up print made of the selected slide and displayed it in the liquor store for customer comment. At about the same time, Martin sent a letter to Cuny instructing him to put Martin's name on the order for prints so that Cuny would not "get hassled about the copyright." He also indicated he expected to see the work on display the next time he visited the liquor store. Martin, according to his testimony, did not visit the store again until 1992.

Cuny and Martin met in January 1985, however, when Cuny told Martin that he was selling posters and tee-shirts with the work printed on them. Martin asked for copies, which Cuny sent to him in due course. Moreover, Martin told Cuny he had failed to get a release from the female model. In 1989 Lips Too used the work on postcards as well as the tee-shirts and posters. The postcards, however, bore the notice of copyright under the Lips Too name.

The posters, postcards and t-shirts were prominently displayed in the Lips Too store and routinely sold along with other novelty items and paraphernalia during the entire period from 1984 through 1991. During this time, Martin traveled past the store on Interstate 70 at least four or five times each year until he moved from Aspen to Englewood.

Martin says he first learned of the tee-shirts in mid–1992 when he saw someone wearing one in a bar in Denver. Later that year, he visited the Lips Too store. He did not see or ask for Cuny, but bought some of the items carrying the impressed work.

On November 16, 1992, shortly after this purchase, Martin filed for a registration of copyright in the photographic image as an unpublished work. He called the work "Loving Couple". He did not list Cuny as a co-author nor did he list the Lips Too logo as a pre-existing material created by another. He claimed to be the sole author of the entire copyrightable expression contained in the

work. He did not state or advise the Copyright Office that the work had in fact been published. For his deposit copy, he reproduced the image on the postcard, but doctored it so as to delete the material identifying Beaver Liquors. He did not include a copy of the back of the postcard, which showed that the work was published.

As Martin intended, the Copyright Office relied on his representations and granted his application. The image was registered as an unpublished work.

After registering the copyright, Martin and a friend, Jeff Andrew, visited Lips Too in January, 1993. Andrew asked Cuny who the photographer was. Either without seeing or recognizing Martin, Cuny replied the photograph had been taken by a photographer from Aspen and Lips Too had been given the rights to use it on posters, postcards, tee-shirts and whatever other merchandise it wanted.

Later that same month, Martin sent Cuny a letter notifying him for the first time of his claim. Upon receipt, Cuny called Martin and left two recorded messages in which he first expressed surprise and befuddlement and then, after thinking about it, anger that Martin would attempt something so contrary to Cuny's understanding of their arrangement. Such is the genesis of much litigation.

Martin filed his lawsuit on August 2, 1993—nearly nine years after the events upon which he based his complaint began. During that same period and without any effort to avoid or evade Martin, Lips Too used the photograph on its sale items, expanded the merchandise line and promoted its circulation and display.

## CONCLUSIONS OF LAW

■ A valid copyright is fundamental to any claim of copyright infringement. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). A valid copyright and rights under it may be licensed by oral or written agreement or may be implied by the conduct of the parties. *Effects Assoc. Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir.1990).

■ Assuming, for the moment, the existence of a valid copyright, the parties entered into a barter agreement in which Martin received merchandise and Lips Too and Cuny received permission to reproduce the subject work and manufacture and sell merchandise emblazed with reproductions or copies of it, and the parties contemplated such merchandise would include posters and tee-shirts. The addition of postcards to the product line was a reasonable extension of that permission by implication. Such permission constituted a nonexclusive license from Martin to the defendants.

■ The subject work was jointly created by Martin and Cuny, with the intent that their contributions be merged into one. As joint owners, the defendants did not infringe the copyright and were free to exploit it without the consent of either.

■ Even so, the delays in asserting the sole ownership of the copyright by Martin constituted laches substantially prejudicing the rights of the defendants. It is obvious Cuny and Lips Too were denied the opportunity to assert the agreement, negotiate or desist entirely from expending funds for manufacture because of Martin's insouciant delay in asserting his infringement claim. They were prejudiced further by the delay in not being able to obtain and preserve records and receipts to isolate sales and profits and losses attributable to the work.

■ The copyright registration Vau 243,386 is invalid. The presumption of validity afforded by 17 U.S.C. § 410(c) is rebutted where it is established, as it is here, that the Copyright Office was provided with false information, *Gates Rubber Co. v. Bando Chemical Industries, Lt.*, 9 F.3d 823 (10th Cir. 1993), or where information is withheld by the applicant that may have resulted in rejection of the application. *Masquerade Novelty, Inc. v. Unique Industries, Inc.*, 912 F.2d 663, 667 (3d Cir.1990). Both false information submitted and disqualifying information withheld by Martin invalidate the copyright registration. Without a valid registration, there can be no claim for infringement. 17 U.S.C. § 411.

Martin is estopped from recovering any damages from the defendants. Martin misled the defendants by his failure to assert any financial interest in the sale of the merchandise with the work affixed, and his overt communication in transmitting the two slides and advising Cuny to use Martin's name when ordering prints so as to avoid being "hassled about the copyright", which quite clearly stated his expectation that the work would be displayed. The defendants reasonably inferred that Martin was not and would not be asserting any rights against them. By proceeding to display the work and arranging to manufacture merchandise featuring the work, the defendants relied on that conduct. Due to their reliance, the defendants would be materially prejudiced if Martin were not estopped from asserting his claim against them.

Based on the foregoing, Martin is not entitled to any damages. Further, the action brought under the Colorado Consumer Protection Act was groundless and frivolous. Defendants are entitled to their reasonable attorney fees incurred in defense of that claim. Because defendants are the prevailing parties on the copyright infringement claim, they should be awarded attorney fees for the defense of that claim as well. I conclude this as an exercise of judicial discretion, based on my findings concerning credibility, Martin's delay in bringing this action and his failure to produce persuasive evidence to support his claims.

## ORDERS

It is ordered that judgment shall enter in favor of defendants and against plaintiff and that plaintiff's complaint is dismissed with prejudice, and,

It is further ordered that defendants shall submit appropriate time and billing records in support of their demand for attorney fees to the plaintiff within thirty days of the date of this order. If the parties cannot agree on a reasonable amount for the award of attorney fees to be entered as a part of the judgment against the plaintiff, then within forty-five days after the date of this order, the defendants shall file a motion for attorney fees together with such affidavits as they deem appropriate and the cause will be set for hearing with the costs and attorney fees necessary for that hearing to be assessed as well according to the merits of the contest.

The plaintiff shall bear the costs of this action provided defendants submit a bill of costs as prescribed by court rule.